IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM W. JENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| JONATHAN L. MAYES, Individually and in | ) | |
| his Official Capacity; DAVID A. GIVEN, | ) | |
| Individually and in his Official Capacity; LEWIS | ) | Cause No. 1:18-cv-468 |
| FEREBEE; Individually and in his | ) | |
| Official Capacity; LE BOLER, Individually | ) | |
| and in her Official Capacity; LELA TINA | ) | |
| HESTER; Individually and in her Official | ) | |
| Capacity; and SHALON DABNEY, Individually | ) | |
| and in her Official Capacity, WANDA | ) | |
| LEGRAND, Individually and in her | ) | |
| Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF AND REQUEST FOR TRIAL BY JURY**

Plaintiff William W. Jensen, by counsel, for his Complaint for Damages and Injunctive

Relief and Request for Trial by Jury against Defendants Jonathan L. Mayes, Individually and in

his Official Capacity; David A. Given, Individually and in his Official Capacity; Lewis Ferebee,

Individually and in his Official Capacity; Le Boler, Individually and in her Official Capacity;

Lela Tina Hester, Individually and in her Official Capacity; Shalon Dabney, Individually and in

her Official Capacity; and Wanda Legrand, Individually and in her Official Capacity, states as

follows:

**I.   NOTE**

This matter is directly related to another matter that is pending in the United States

District Court for the Southern District of Indiana, Indianapolis Division – *William W. Jensen v.*

*Indianapolis Public Schools, et al.*, Cause No. 1:16-cv-2047-TWP-DML. To preserve Mr. Jensen's rights to pursue these claims, Mr. Jensen must file this *Complaint for Damages and Injunctive Relief and Request for Trial by Jury* before the statute of limitations runs as to these Defendants named in this *Complaint*. Mr. Jensen has sought to amend his Complaint in the pending action, but no ruling has been made on Mr. Jensen's *Motion for Leave to File Amended Complaint* [Dkt. 69], which seeks to amend the Complaint to add Jonathan L. Mayes; David A. Given; Lewis Ferebee; Le Boler; Lela Tina Hester; Shalon Dabney; and Wanda Legrand as Defendants in the pending matter. Thus, Mr. Jensen brought this *Complaint for Damages and Injunctive Relief and Request for Trial by Jury* albeit it is a related matter.

## II.    INTRODUCTION

1.    This is an action brought by William W. Jensen. This action seeks damages and injunctive relief resulting from the Defendants' tortious conduct and violations of Mr. Jensen's rights under the United States Constitution stemming from IPS's wrongful termination of Mr. Jensen. This action is against Mr. Mayes (in his individual and official capacities); Mr. Given (in his individual and official capacities); Dr. Ferebee (in his individual and official capacities); Ms. Boler (in her individual and official capacities); Ms. Hester (in her individual and official capacities); Ms. Dabney (in her individual and official capacities); and Dr. Legrand (in her individual and official capacities) (hereinafter referred to as "Defendants").

## III.    JURISDICTION

2.    Plaintiff William W. Jensen resided in Marion County, Indiana at all times relevant to this action.

3.      Defendant Jonathan L. Mayes was the self-proclaimed and admitted Hearing Officer during Mr. Jensen's hearing before the Board in June of 2016, and he resided in Marion County, Indiana at all times relevant to this action.

4.      Defendant David A. Given was the Lead Investigator, and he resided in Hamilton County, Indiana at all times relevant to this action.

5.      Dr. Lewis Ferebee is the Superintendent of Indianapolis Public Schools, and he resided in Marion County, Indiana at all times relevant to this action.

6.      Le Boler is the Chief Strategist at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

7.      Lela Tina Hester was the Human Resources Director at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

8.      Shalon Dabney was a Human Resources Case Manager at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

9.      Wanda Legrand was the Deputy Superintendent at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

10.      The Court has personal jurisdiction over all parties.

11.      The causes of action arose in Indianapolis, Indiana which is in Marion County, Indiana.

12.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Mr. Jensen's claims brought under 42 U.S.C. § 1983.

13.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Mr. Jensen's Indiana state law claims.

## IV.      PLAINTIFF

14.      William Jensen is a resident and citizen of Marion County, Indiana.

## V.      DEFENDANTS

15.      Defendant Jonathan L. Mayes was the self-proclaimed and admitted Hearing Officer during Mr. Jensen's hearing before the Board in June of 2016, and he resided in Marion County, Indiana at all times relevant to this action.

16.      Defendant David A. Given was the Lead Investigator, and he resided in Hamilton County, Indiana at all times relevant to this action.

17.      Dr. Lewis Ferebee is the Superintendent of Indianapolis Public Schools, and he resided in Marion County, Indiana at all times relevant to this action.

18.      Le Boler is the Chief Strategist at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

19.      Lela Tina Hester was the Human Resources Director at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

20.      Shalon Dabney was a Human Resources Case Manager at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

21.      Wanda Legrand was the Deputy Superintendent at Indianapolis Public Schools, and she resided in Marion County, Indiana at all times relevant to this action.

## VI.      STATEMENT OF FACTS

**Introduction**

22.      This lawsuit involves IPS violating Mr. Jensen's State of Indiana Constitutional rights and U.S Constitutional rights to due process and IPS wrongfully terminating his employment at IPS based on this denial of due process.

23.      The violations by IPS, the Board, Mr. Mayes, Mr. Given, Dr. Ferebee, Dr. Legrand, Ms. Boler, Ms. Hester and Ms. Dabney include, but are not limited to, the refusal to

reschedule Mr. Jensen's hearing, IPS's failure to provide notice to Mr. Jensen of the allegations against him and the failure of IPS and Mr. Given to advise Mr. Jensen of his *Garrity* rights.

**Mr. Jensen's Background**

24.     Mr. Jensen has been a professional educator for nearly forty (40) years. Mr. Jensen has no prior discipline.

25.     His career includes fifteen (15) years working for IPS, fifteen (15) years with Los Angeles Unified School District, six (6) years at Nishimachi International School, a private K-8 school in Tokyo, Japan, and two (2) years at Pulaski High School in Pulaski, Wisconsin.

26.     Many of those years were spent in the classroom as an English teacher teaching everything from ninth grade composition to AP English Literature.

27.     Ten (10) years ago, Mr. Jensen began his administrative career and was the Academic Dean (Principal) of the Academy of Creative Expression on the campus of Arsenal Technical High School in Indianapolis.

28.     Most recently he served as Assistant Principal in charge of the Freshman Center at Arsenal Tech and Assistant Principal at the IPS Longfellow Alternative School.

29.     His education includes a BA in English from Lawrence University in Appleton, Wisconsin and an MA in Education from Indiana Wesleyan University. He earned his Administrative Credential in School Leadership from Indiana Wesleyan in 2006.

**IPS's Violation of Explicit Statutory Duty By Refusing to Even Consider Mr. Jensen's Reasonable Request to Reschedule the Hearing Date**

30.     Although Mr. Jensen had longstanding pre-arranged personal family travel plans to visit his ill brother that prevented him from attending the school board hearing on June 23, 2016 at 6:00PM, and although the Indianapolis Public Schools (IPS), Mr. Mayes, Dr. Ferebee and the Board of Commissioners for IPS were made aware of these plans, the school board

hearing to terminate Mr. Jensen's teacher and administrator contracts proceeded without him on June 23, 2016.

31.    IPS, Mr. Mayes, Dr. Ferebee and the IPS Board of Commissioners refused to even consider Mr. Jensen's "reasonable cause" justification for re-scheduling. IPS could have at least considered a new date, but IPS refused to do so.

32.    Moreover, despite the statutory provision of the Teacher Tenure Act that requires that "the time period in [Ind. Code § 20-28-7.5-2] shall be extended for a reasonable period: (1) when a teacher or school official is ill or absent from the school corporation; or (2) for other reasonable cause," IPS stated to Mr. Jensen that the hearing "will be held June 23" without checking with Mr. Jensen about this date, without asking him if this date was acceptable or available or even discussing other potential dates for this hearing. It was simply a mandate from IPS although a final written decision does not need to be made until July 13, 2016 – thirty (30) days after Mr. Jensen requested his additional private conference on June 13, 2016.

33.    After mandating the June 23, 2016 date, IPS, the Board, Mr. Mayes and Dr. Ferebee simply refused to even consider an alternative date. IPS could have at least considered a new date, but IPS refused to do so.

34.    This scheduling of the hearing on June 23, 2016 for which Mr. Jensen was not present was thus a violation of the statute because it did not allow him "to present evidence to refute the reason or reasons" for the termination of his contracts by IPS as required by the applicable statute.

35.    In addition, although Mr. Jensen's counsel requested by written letter that fourteen (14) IPS employees who possess relevant evidence be present at the hearing on June 23, 2016 to testify, twelve (12) of the fourteen (14) employees refused to attend the hearing to provide testimony. Indeed, of these fourteen (14) witnesses, only Mark Cosand, Deborah Leser

and Dr. Ferebee were present to testify. Likely, Dr. Ferebee would not have been present to testify had IPS not called Dr. Ferebee as their own witness.

36.     Moreover, the Board's behavior during Mr. Jensen's hearing was unprofessional and disrespectful. Not only did many of the Board Members roll their eyes, make comments during the hearing that were clearly derogatory toward Mr. Jensen and his counsel, but some, including Board Member Kelly Bentley, did not pay much attention during the hearing, but instead played on their cellular phones. Such disrespectful and unprofessional behavior during a hearing about a man's forty (40) year career was completely unfair to Mr. Jensen and violated his due process right to be heard.

37.     Moreover, Mr. Mayes, the self-proclaimed and admitted Hearing Officer during Mr. Jensen's hearing, advised the Board prior to and throughout the hearing process.

**IPS's Failure to Provide Notice to Mr. Jensen of the Basis For IPS's Termination of His Employment**

38.     As required by Indiana Code § 20-28-7.5-2(a)(2), IPS failed to provide proper notice or at least sufficient notice to Mr. Jensen.

39.     Specifically, IPS has failed to sufficiently notify Mr. Jensen of the reasons why it alleged that he violated IPS Policy 3213 and IPS Administrative Guideline 3213.01.

40.     IPS provided only an overly vague summary to support its contention that Mr. Jensen violated the named Policy and Administrative Guideline.

41.     The Policy and Administrative Guideline contained five (5) pages of duties and directives, but IPS provided no facts whatsoever that were allegedly the basis for this violation(s) and also provided no part of these five (5) pages of duties and directives that were allegedly violated.

42.     Not only is there no duty or directive pointed out that was violated in these five (5) pages, but there is an absence of sufficient facts that brought about such a violation.

43.     IPS failed to correct the due process issues raised by Mr. Jensen during a previous termination process abruptly cancelled by IPS (although IPS had 2 ½ months to do so).

44.     Instead, IPS added another legal basis for termination (insubordination), but again provided no factual basis whatsoever for the claim of insubordination.

45.     During a prehearing conference on June 21, 2016, counsel for IPS could not and would not state the factual basis for Mr. Jensen's termination.

46.     Moreover, counsel for IPS stated during an additional prehearing conference on June 22, 2016 that the information provided in the May 31, 2016 termination letter is the sum total of the explanation of charges against Mr. Jensen.

47.     Potentially because no reason or reasons for contract cancellation were provided, Mr. Jensen was not able to present evidence to refute the reason(s) as he was unaware of the reasons. This lack of notice of the basis for IPS's termination also precluded Mr. Jensen from his right to be heard because he did not know the wrong he had committed.

48.     Although the alleged notice seemingly gave a factual explanation, it actually did not.

49.     The new legal claim of "insubordination" simply had no factual support whatsoever from a review of the letter.

50.     The other two claims only were supported by the generality of a "failure to follow" five (5) pages of single-spaced policy language – none of which was specifically identified in any way; nor was it revealed what Mr. Jensen did or did not do factually specifically to violate or failure to follow any of the terms of the policy found on these five (5) pages.

**Chronology of Fact Showing Due Process Violations**

51.     On February 5, 2016, IPS announced that a public hearing would be held on February 16, 2016 as to a pay raise of $60,000 and a 2-year extension for Dr. Ferebee as well as $30,000.00 in raises to subordinates to Dr. Ferebee. IPS also announced that there would be a Board briefing on February 23, 2016 and would vote on this matter on February 25, 2016.

52.     On February 16, 2016, a Public Hearing was held where there was opposition to Dr. Ferebee's pay raise and contract extension as well as opposition to the $30,000.00 in raises for direct reports to Dr. Ferebee.

53.     One day later, on February 17, 2016, a parent reported the Shana Taylor matter to Longfellow Academy. She initially reported it to Beryl Borel, who then reported it to Mr. Jensen. Mr. Jensen, Ms. Borel, Michael Gibbs and Dr. Kevin Brown then met with the parent.

54.     On February 17, 2016, Mr. Jensen immediately contacted Ms. Leser who told Mr. Jensen to call Ms. Tina Hester per the policy/procedure. The policy stated:

> **What should you do if you can't figure out what to do?**
> Call the Title IX Coordinator at 226-3870 or the Assistant Superintendent, Human Resources at 226-4580, who are the primary resource persons in these matters.

55.     Ms. Hester received the photographs and inappropriate texts from the mother of the IPS student who was involved in the inappropriate relationship with Shana Taylor on February 17, 2016.

56.     Dr. Ferbee also learned of at least an inappropriate relationship between Shana Taylor and the student on February 17, 2016.

57.     Dr. Ferebee was told of these allegations by Le Boler after Ms. Leser informed both Ms. Boler and Dr. Legrand of the allegations on February 17, 2016.

58.     Ms. Hester decided on February 17, 2016 to not involve the police and assigned Shalon Dabney to investigate. Both were direct violations of law and policy.

59.     On February 22, 2016 at 5:45pm Ms. Dabney told Mark Cosand to report to Child Protective Services (CPS). Mr. Jensen had become ill on the evening of February 17, 2016 and asked Mr. Cosand to follow through with the situation.

60.     On February 23, 2016, Mr. Cosand reported the inappropriate relationship to CPS.

61.     On February 25, 2016, a vote was held on the pay raises and contract extension for Dr. Ferebee. The Board voted (minus 1 Board Member) to approve Dr. Ferebee's raise and extension as well as pay raises for direct subordinates of Dr. Ferebee's.

62.     On March 2, 2016, the Shana Taylor story broke publicly.

63.     Mr. Jensen was ready, willing and able to go to his hearing on Monday, April 11, 2016. IPS, however, abruptly cancelled the hearing on Friday, April 8, 2016 at 8:41 P.M. via email only after counsel for Mr. Jensen inquired about the conference.

64.     This was likely based on impending criminal charges against Ms. Hester and Ms. Dabney.

65.     Ms. Hester and Ms. Dabney were criminally charged with failure to make a Report on April 12, 2016.

66.     Ms. Hester and Ms. Dabney were permitted to resign from their employment on June 30, 2016.

67.     No criminal charges were ever filed against Mr. Jensen.

**Mr. Jensen Followed Policy and the Direction of his Superiors at All Times**

68.     During the hearing regarding the cancellation of Mr. Jensen's contract, Dr. Ferebee admitted that applicable Policy 3213.01 directed Mr. Jensen to contact Ms. Hester as the

Assistant Superintendent and head of Human Resources for IPS. Mr. Jensen did so. He was compliant with policy.

69.     Procedure 3213.01 provides:

> **What should you do if you can't figure out what to do?**
> Call the Title IX Coordinator at 226-3870 or the Assistant Superintendent, Human Resources at 226-4580, who are the primary resource persons in these matters.

70.     Deborah Leser, the Director of Student Services, had also directed Mr. Jensen to contact Ms. Hester.

71.     Mr. Jensen also sought guidance of what to do from Ms. Hester, who reports directly to Superintendent Lewis Ferebee. Her phone number is actually included in the policy that applies to this situation and the same policy that IPS claimed Mr. Jensen violated. Dr. Ferebee admitted during the hearing that the phone number listed was Ms. Hester's phone number.

72.     Ms. Hester directed Mr. Jensen to not provide any information to a law enforcement officer. "Let's not involve the police just yet," she stated to Mr. Jensen when he informed her that he had an IPS law enforcement officer ready to assist with this situation.

73.     Mr. Jensen had requested IPS Officer James Sheroan to potentially transmit the photographs and texts from the mother of the student involved with the IPS counselor. Mr. Jensen did not see and has never seen these photographs or texts that the mother had on her phone. The police officer who Mr. Jensen was ready to provide this digital information to, stated to Mr. Jensen: "If this involves criminal activity, I will have to make an official report." Once the police officer told Mr. Jensen this, Mr. Jensen asked the officer to standby while he checked with Ms. Hester. In response to this information, Ms. Hester stated to Mr. Jensen: "let's not involve the police just yet." It was Mr. Jensen's understanding that Child Protectives Services and the

police work in a cooperative arrangement on suspected child abuse and neglect cases.  Involving the police would trigger the involvement of CPS and vice versa. Ms. Hester also instructed Mr. Jensen to direct Ms. Taylor to the offices of Ms. Dabney in the morning for Ms. Dabney to investigate.

74.     Dr. Ferebee also admitted during the June 23, 2016 hearing that the police and CPS were one in the same for reporting child abuse.

75.     Ms. Hester's direction to Mr. Jensen is consistent with her direction to Le Boler and the IPS Police in her February 18, 2016 email. ("I asked that the school police stay out of it so that she is not charged and we can handle from HR perspective…."). In response, Le Boler informed Ms. Hester that she "saw Chief Garner sent an email to IPS Police reminding them of the confidentiality this morning.")

76.     Ms. Hester's direction to keep the police out of the situation was also confirmed in several news articles as well as the Probable Cause Affidavit for her criminal arrest.

77.     Mr. Jensen followed the policies that apply to this situation involving Shana Taylor, and he followed the directions of his superior, Ms. Tina Hester. He followed the applicable IPS policy and the directions of his superiors at IPS. Nonetheless, Dr. Ferebee claimed on June 23, 2016 at the hearing that Mr. Jensen had violated IPS policy. The policy of IPS said to contact Tina Hester which he did within minutes of receiving the information from the mother of the student who was allegedly involved in an inappropriate sexual relationship with Shana Taylor.

78.     Dr. Ferebee also confirmed that he did not believe there was any mal-intent involved in the situation and that Mr. Jensen was not attempting to cover anything up.

**Criminal Charges Against Tina Hester and Shalon Dabney**

79.    Mr. Jensen was also aware of the criminal charges against Tina Hester and Shalon Dabney relating to their failure to report the Shana Taylor incident as well as their guilty pleas for violation of the law. Mr. Jensen reviewed the criminal charges against them as well as their admissions of guilt in their plea agreements.

80.    Mr. Jensen was interviewed and investigated by the Marion County Prosecutor's Office and the Indianapolis Metropolitan Police Department regarding the situation involving Shana Taylor, and no charges were filed against him. Mr. Jensen was informed that the prosecutor chose not the file charges against him.

**Dr. Ferebee Learned of the Inappropriate Relationship on February 17, 2016, the Same Date it was Reported by the Mother of the Student, but Failed to Make Any Report**

81.    Dr. Ferebee admitted during the hearing on June 23, 2016 that he was aware of the inappropriate relationship between Shana Taylor and the student on **February 17, 2016** – the same day the mother reported the relationship.

82.    Specifically, Dr. Ferebee "learned that there was a report from a parent of a possible inappropriate relationship between a staff member and a student at Longfellow."

83.    Dr. Ferebee learned of this relationship through Ms. Boler.

84.    Ms. Leser had informed both Ms. Boler and Dr. Legrand of the possibly inappropriate relationship.

85.    Dr. Ferebee further admitted that he did not report the inappropriate relationship to CPS or law enforcement either although he had a duty to do so.

86.    Dr. Ferebee received a large pay raise and bonus of $60,000.00 and a 2-year contract extension for his nearly $210,000.00 a year job – on February 25, 2016 – mere days after learning of the inappropriate relationship and failing to report it.

**Interview by Attorney for IPS, David Given, Without Providing Constitutional Rights to Mr. Jensen**

87.     Mr. Jensen did not hear anything more about this situation until he was interviewed by David Given on March 3, 2016.

88.     Mr. Given is a partner in the law firm of Faegre Baker Daniels. He introduced himself as an attorney representing IPS, and stated that he wanted to ask Mr. Jensen questions about the reporting of the situation involving Ms. Taylor to CPS and why it took six (6) days for IPS to do so. This was a potential criminal issue, and there was an ongoing criminal issue relating to this matter at the time of this interview.

89.     During this investigatory interview with Mr. Given and during a second investigatory interview, Mr. Given failed to advise Mr. Jensen of his *Garrity*[1] rights. Thus, any statements made to Mr. Given cannot be used.

**Ms. Hester on Behalf of IPS Suspended and Terminated Mr. Jensen for Doing What Ms. Hester Instructed Mr. Jensen to Do**

90.     On March 7, 2016, Ms. Hester suspended Mr. Jensen from his job duties.

91.     Ms. Dabney was also in the room when Ms. Hester informed Mr. Jensen of his suspension for "failure to notify CPS." Mr. Jensen then reminded Ms. Hester of her directions to him, and she admitted that she had directed him not to involve the police. She also stated that she "stays in her lane" of HR issues. Her phone number is included in the policy for reporting child abuse to CPS. She is also an Assistant Superintendent of IPS.

92.     Ms. Hester admitted to Mr. Jensen that she had informed Mr. Given during her internal investigation interview that she had told Mr. Jensen not to involve the police, and that she was in possession on February 17, 2016 of the full set of facts and had the texts and

---

[1] *Garrity v. New Jersey*, 385 U.S. 493 (1967).

photographs from the mother on February 17, 2016. But she had failed to report anything about this situation to CPS.

93.     On March 8, 2016, Ms. Hester was later charged criminally for her failures to report to CPS terminated Mr. Jensen's contract again for failure to report to CPS. She also immediately offered him retirement in lieu of termination and possibly a $20,000 buy-out for retirement.

94.     Mr. Jensen met with Dr. Ferebee on March 14, 2016 for a Superintendent Conference as part of his proposed termination. During this Superintendent Conference in which Dr. Ferebee allegedly investigated and interviewed Mr. Jensen regarding a potentially criminal issue, Dr. Ferebee failed to advise Mr. Jensen of his *Garrity* rights. *See Devitt*, 499 F.2d at 141 (holding that "nor can disciplinary action be taken against the witness for his refusal to testify, unless he is first advised that, consistent with the holding in *Garrity*, evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings"). (citing *Gardner*, 392 U.S. 273). Thus, any statements made to Dr. Ferebee cannot be used.

95.     According to Dr. Ferebee's testimony during the June 23, 2016 hearing, Mr. Jensen made a "number of admissions" relating to the Shana Taylor matter and reporting to CPS. Dr. Ferebee is wrong. Mr. Jensen never made any such admissions. Even if such admissions were made, no *Garrity* rights were given.

96.     Dr. Ferebee testified on June 23, 2016 that during this meeting on March 14, 2016, Dr. Ferebee claimed that Mr. Jensen stated that nobody directed him **not** to report the suspected child abuse or neglect to the police. This is false. Indeed, as Mr. Jensen stated above, Dr. Hester specifically directed Mr. Jensen not to contact the police.

97.     On June 23, 2016, Dr. Ferebee testified: "I concluded that Mr. Jensen was aware and familiar with our policy and procedures as relates to reporting suspected child abuse or

neglect to Child Protective Services, and he failed to fulfill his responsibility as relates to the policy and administrative guidelines. Also, I concluded that **no one** directed him not to report to Child Protective Services." (emphasis added). This is, again, patently false. Mr. Jensen told Dr. Ferebee that Mr. Jensen had contacted Ms. Hester upon direction of Ms. Leser and based on the policy provision providing that he do so.

98.     Even if all of this were true – which it is not – Mr. Jensen did not commit neglect of duty, insubordination and/or other good or just cause to cause his termination.

99.     Indeed, no one told Dr. Ferebee to not report to CPS or the police – but he failed to do so. And Dr. Ferebee admitted on June 23, 2016 that he also had a duty to report as to this Shana Taylor situation.

100.     Dr. Ferebee also testified on June 23, 2016 that it was not his job as a chief executive and Superintendent to ask what kind of inappropriate relationship once he learned of an inappropriate relationship.

101.     Indeed, it is now clear to Mr. Jensen that Dr. Ferebee had already made his decision to terminate Mr. Jensen prior to the Superintendent Conference on March 14, 2016 as Dr. Ferebee admitted during the hearing on June 23, 2016 that he and Ms. Hester together made the Principal's Preliminary Decision to terminate Mr. Jensen prior to his meeting with Dr. Ferebee on March 14, 2016.

102.     Specifically, Dr. Ferebee testified on June 23, 2016: "We – well, I should say I and the administrative team made a recommendation to terminate the teacher and administrative contract for Mr. Jensen, and Mr. Jensen requested a hearing with the superintendent."

103.     Mr. Jensen's Superintendent Conferences with Dr. Ferebee were clearly pointless as Dr. Ferebee had already made his decision to terminate Mr. Jensen.

**Dr. Ferebee's Further Violations of Procedure 3213.01**

104.    Dr. Ferebee himself violated the policy in many ways. Not only did he fail to report the inappropriate relationship between Shana Taylor and the student – which he admits he failed to do – but he (or individuals at his direction) also violated policy 3213.01 by knowingly assessing and interviewing the victim as well as the perpetrator – which is in direct violation of his policy. ("Do not discuss the matter with the alleged victim, the alleged perpetrator, staff members, or family members of the child.").

105.    Indeed, Dr. Ferebee testified on June 23, 2016 that Dr. Hester reported to him on February 17, 2016 that "[t]hat the matter was being investigated and the employee in question was being brought in for additional questions related to that matter."

106.    Based on this direct violation of Policy 3213.01, the perpetrator, Shana Taylor, attempted to visit the victim following her interview with IPS seemingly to request the victim to recant his story. ("Also, we got a call from [A.H.]'s mom that Ms [sic] Taylor showed up at their apartment this morning after her meeting with you.").

107.    Moreover, Dr. Ferebee testified that it was his "responsibility to establish those policies, procedures, and training, not to deliver those." In other words, it is not Dr. Ferebee's responsibility – according to Dr. Ferebee – to make sure the policies and procedures are followed, even a policy relating to sexual abuse of IPS children.

**IPS's Second Termination Attempt of Mr. Jensen**

108.    Mr. Jensen was ready, willing and able to go to his hearing on Monday, April 11, 2016. IPS, however, abruptly cancelled the hearing on Friday, April 8, 2016 at 8:41 P.M. via email only after counsel for Mr. Jensen inquired about the conference.

109.    It appears that Mr. Jensen's conference was cancelled on the eve as IPS's Human Resources Operations Officer, Tina Hester, and IPS's Title IX Coordinator, Shalon Dabney,

were criminally charged for their failure to report the Shana Taylor matter to CPS on April 12, 2016 (although the Probable Cause Affidavit was signed on April 10, 2016).

110.     After abruptly cancelling the hearing on April 8, 2016, IPS, the Board, Mr. Mayes and Dr. Ferebee chose to wait an additional 2 ½ months to allegedly sort through the due process issues raised by Mr. Jensen before rescheduling this hearing. IPS, however, failed to rectify any of the raised due process issues or ever consult with counsel for Mr. Jensen about these due process issues. Indeed, instead of rectifying these due process issues, IPS added another legal basis for termination without any factual basis further violating due process.

111.     Because IPS failed to make a written decision within thirty (30) days of Mr. Jensen's first request for a private conference with the Board, IPS waived its ability to terminate Mr. Jensen on the factual basis of making a report to CPS in the Shana Taylor Matter. IPS, therefore, was estopped from proceeding with the hearing on June 23, 2016 because of IPS's failure to comply with the statute as specifically required by the statute.

112.     Indiana Code § 20-28-7.5-2 provides that "[t]he final decision must be in writing and must be made not more than thirty (30) days after the governing body receives the teacher's request for the additional private conference." Mr. Jensen first requested a private conference with the Board on March 17, 2016. Although Mr. Jensen was ready, willing and able to attend his hearing on April 11, 2016, IPS cancelled the hearing on Friday, April 8, 2016 at 8:41 P.M via email only after counsel for Mr. Jensen inquired about the conference.

113.     On May 31, 2016 – 2 ½ months late from the cancellation – Mr. Jensen was again informed that his contract was being terminated by IPS, but this time the recommendation to do so was made by Joyce Akridge. This is a person that Mr. Jensen has never met, never talked to, and is totally unfamiliar with. She could not have had any knowledge about Mr. Jensen's actions

or inactions in this matter because she was not involved in any way. Yet it was based on her recommendation that Lewis Ferebee decided to terminate Mr. Jensen's contract.

**June 23, 2016 Hearing was Held Without Mr. Jensen Present**

114.    A hearing was held on June 23, 2016 in Mr. Jensen's matter.

115.    During that hearing, the Board and its counsel, Hearing Officer Jonathan L. Mayes, initially refused to answer whether Mr. Jensen's hearing was being recorded:

| | |
|---|---|
| **Mr. Betz:** | This is a question. I got my motions. Who is recording this? |
| **Vice President Odle:** | Well, it might be your question, but we don't have to answer. |
| **Mr. Betz:** | You're not going to answer my question? |
| **Vice President Odle:** | No. |

116.    Once the Board finally confirmed that the hearing was being recorded, the Board and Mr. Mayes then refused to state when Mr. Jensen would have access to the recording.

117.    Indeed, the Board and Mr. Mayes went so far as to threaten to remove Mr. Betz's camera equipment and Mr. Betz from the Board hearing:

| | |
|---|---|
| **Mr. Betz:** | You threatened me to take my equipment and remove me from the hearing all over the simple issue of getting access to the recording…. |

**Longfellow 12**

118.    IPS, the Board and Dr. Ferebee also failed to terminate the members of the "Longfellow 12" (except Mr. Jensen and Ms. Leser). These are the individuals who knew about the inappropriate relationship, but failed to report it.

119.     The Longfellow 12 include the following individuals: (1) Lewis Ferebee; (2) Le Boler; (3) Wanda Legrand; (4) Tina Hester; (5) Shalon Dabney; (6) Deb Leser; (7) William Jensen; (8) Mark Cosand; (9) Beryl Borel; (10) Michael Gibbs; (11) Dr. Kevin Brown; and (12) Sandy Bombic.

## VII.     STATEMENT OF CLAIMS

### COUNT I
(**Refusal to Reschedule Hearing for a Date and Time When Mr. Jensen Could be Available for His Own Hearing in Violation of the 14th Amendment to the U.S. Constitution**)

120.     Mr. Jensen incorporates the allegations of paragraphs 1 through 119 above and, in addition, states that the Defendants refused to reschedule Mr. Jensen's hearing for a date and time when Mr. Jensen could be available for his own hearing, in violation of the Fourteenth Amendments to the U.S. Constitution, actionable under 42 U.S.C. § 1983.

121.     Mr. Jensen suffered the deprivation of his rights, liberties and immunities as secured and guaranteed under the Constitution and Laws of the United States of America and the State of Indiana.

122.     The failure to provide Mr. Jensen sufficient procedural due process protections by refusing to reschedule Mr. Jensen's hearing for a date and time when Mr. Jensen could be available for his own hearing was in direct violation of Mr. Jensen's constitutional rights and guarantees as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Right to Due Course of Law under Article I, Section 12 of the Indiana Constitution. He was denied his right to be heard because he was not notified of his alleged wrong.

123.     The refusal to reschedule was also so arbitrary and so capricious as to violate Mr. Jensen's constitutional right to substantive due process as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

124.    At all times relevant herein, the Defendants were acting under the color of state law.

125.    Mr. Jensen has suffered and will continue to suffer damages because of the Defendants' unconstitutional actions.

## COUNT II
### (Failure to Provide Proper Notice to Mr. Jensen as required by Indiana Code § 20-28-7.5-2(a)(2) in Violation of the 14th Amendment to the U.S. Constitution)

126.    Mr. Jensen incorporates the allegations of paragraphs 1 through 125 above and, in addition, states that the Defendants failed to provide proper notice or any sufficient notice to Mr. Jensen as required by Indiana Code § 20-28-7.5-2(a)(2), in violation of the Fourteenth Amendments to the U.S. Constitution, actionable under 42 U.S.C. § 1983.

127.    Mr. Jensen suffered the deprivation of his rights, liberties and immunities as secured and guaranteed under the Constitution and Laws of the United States of America and the State of Indiana.

128.    The failure to provide Mr. Jensen with proper notice or any sufficient notice was in direct violation of Mr. Jensen's constitutional rights and guarantees as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Right to Due Course of Law under Article I, Section 12 of the Indiana Constitution.

129.    The failure to provide Mr. Jensen with proper notice or any sufficient notice was also so arbitrary and so capricious as to violate Mr. Jensen's constitutional right to substantive due process as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

130.    At all times relevant herein, the Defendants were acting under the color of state law.

131.    Mr. Jensen has suffered and will continue to suffer damages because of the Defendants' unconstitutional actions.

**COUNT III**
(**Failure to Advise Mr. Jensen of his *Garrity* Rights in Violation of the 5ᵗʰ and 14ᵗʰ Amendments to the U.S. Constitution**)

132.    Mr. Jensen incorporates the allegations of paragraphs 1 through 131 above and, in addition, states that he was not advised of his *Garrity* rights prior to being interviewed by IPS, actionable under 42 U.S.C. § 1983.

133.    During this investigatory interview with Mr. Given and during a second investigatory interview, Mr. Given failed to advise Mr. Jensen of his *Garrity* rights.

134.    Mr. Jensen also met with Dr. Ferebee, the Superintendent of IPS on two (2) occasions. Dr. Ferebee failed to advise Mr. Jensen of his *Garrity* rights during either of these interviews.

135.    At the time of the interviews, Mr. Jensen was facing potential criminal prosecution.

136.    IPS, Dr. Ferebee and Mr. Given failed to give Mr. Jensen immunity from criminal prosecution on the basis of his answers.

137.    Moreover, IPS, Mr. Given (as investigator for IPS) and Dr. Ferebee, as government employers, failed to warn Mr. Jensen that because of his immunity, he could not refuse to answer the questions on the ground that the answers may incriminate him.

138.    Mr. Jensen, under potential criminal prosecution at the time, was not advised of any rights, but was instead terminated from IPS.

139.    Mr. Jensen has been damaged by this termination of his employment.

**COUNT IV**
**(IPS's Decision to Terminate Mr. Jensen was Arbitrary and Capricious in Violation of the 14th Amendment to the U.S. Constitution)**

140.    Mr. Jensen incorporates the allegations of paragraphs 1 through 139 above and, in addition, states that the Defendants' decision to terminate his teaching and administrative contracts was arbitrary and capricious in violation of the Fourteenth Amendments to the U.S. Constitution, actionable under 42 U.S.C. § 1983.

141.    Mr. Jensen suffered the deprivation of his rights, liberties and immunities as secured and guaranteed under the Constitution and Laws of the United States of America and the State of Indiana.

142.    The arbitrary and capricious decision to terminate Mr. Jensen's teaching and administrative contracts was in direct violation of Mr. Jensen's constitutional rights and guarantees as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Right to Due Course of Law under Article I, Section 12 of the Indiana Constitution.

143.    The decision to terminate Mr. Jensen's teaching and administrative contracts was so arbitrary and so capricious as to violate Mr. Jensen's constitutional right to substantive due process as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

144.    At all times relevant herein, the Defendants were acting under the color of state law.

145.    Mr. Jensen has suffered and will continue to suffer damages because of the Defendants' unconstitutional actions.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, William Jensen, prays for a judgment in his favor against

Defendants, and that the following relief be awarded to the Plaintiff:

a. A ruling reversing the Board's Findings and decision to terminate Mr. Jensen's teaching and administrative contracts;

b. An award of damages to compensate Mr. Jensen for damages to his career and reputation by the unlawful practices described above;

c. Compensatory damages and consequential damages;

d. Punitive damages;

e. Attorney's fees and costs;

f. Prejudgment and postjudgment interest; and

g. Grant such further relief as the Court deems necessary and proper in the public interest and pursuant to 42 U.S.C. § 1983.

## IX.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Mr. Jensen reserves the right to assert

additional violations of state and federal state law.

## X.   JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,


*s/ Jamie A. Maddox*
Kevin W. Betz, Esquire
Jamie A. Maddox, Esquire
Attorneys for Plaintiff William Jensen

BETZ + BLEVINS
One Indiana Square
Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com